IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **TDC SPECIALTY INSURANCE COMPANY,** | ) )  CIVIL ACTION NO.  2:25-cv-3214-RMG |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| **GEORGETOWN MEMORIAL HOSPITAL** and **WACCAMAW COMMUNITY HOSPITAL,** | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff TDC Specialty Insurance Company ("TDCSI"), for its complaint against Defendants Georgetown Memorial Hospital ("Tidelands Georgetown") and Waccamaw Community Hospital ("Tidelands Waccamaw" and, collectively with Tidelands Georgetown, "Tidelands"), alleges on information and belief as follows:

## NATURE OF ACTION

1. TDCSI files this action to obtain a judicial determination and declaration as to the parties' rights and obligations under Health Care Organizations and Providers Follow Form Excess and Umbrella Liability Policy No. HPX-00086-20-00 issued by TDCSI to Tidelands Georgetown for the **policy period**[1] July 31, 2020 to April 1, 2021 (the "2020-21 Policy"), Health Care Organizations and Providers Follow Form Excess and Umbrella Liability Policy No. HPX-00086-22-02 issued to Tidelands Georgetown for the **policy period** April 1, 2022 to April 1, 2023 (the "2022-23 Policy"), and Health Care Organizations and Providers Follow Form Excess and Umbrella Liability Policy No. HPX-00086-24-04 issued to Tidelands Georgetown for the

---

[1] Terms in bold appear as bold and are defined in the Policies attached to this Complaint.

4846-4031-7407.3

**policy period** April 1, 2024 to April 1, 2025 (the "2024-25 Policy"), and, collectively with the 2020-21 Policy and the 2022-23 Policy, the "Policies") with respect to a certain **claim**. True and correct copies of the Policies without applications, and with the amount of the premiums redacted, are attached to this Complaint as Exhibits A, B, and C, respectively.

2. An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties and obligations under the Policies.

3. As set forth below, TDCSI seeks a declaratory judgment that the Policies, each of which was issued on a "claims first made" basis, do not afford coverage for an action currently styled *Alyssa Nesbitt Cherry v. Georgetown Physician Services, LLC, et al.,* No. 2023-CP-22-00556 (S.C. Ct. Comm. Pleas, 15th Jud. Cir.) (the "Cherry Action") because (i) the **claim** was first made no later than during the 2022-23 **policy period**, but it was not reported to TDCSI as soon as practicable and therefore the Cherry Action does not fall within the scope of the Insuring Agreement in the Policies; (ii) Tidelands failed to provide written notice to TDCSI of the alleged brain injury, birth-related injuries, and sentinel event as soon as practicable, which is a condition precedent to coverage under each of the Policies; (iii) Tidelands failed to provide to TDCSI written quarterly reports thereafter with requisite details, which is a condition precedent to coverage under each of the Policies; and (iv) the 2024-25 Policy does not afford coverage for the Cherry Action because it is not a **claim** that was first made during the 2024-25 **policy period**.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1), 2201 and 2202. There is complete diversity of citizenship between plaintiff and defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties concerning their respective rights, duties and obligations under the Policies.

6. Venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims at issue in this action occurred in this district, and the Policies were issued to Tidelands, which maintains its principal place of business in this district. The case is assignable to this Division pursuant to Local Rule 3.01(A)(1) as the Division where Defendants do business relating to the events giving rise to the insurance coverage claim at issue.

## PARTIES

7. Plaintiff TDCSI is a corporation organized and existing under the laws of the District of Columbia with its principal place of business located in California. TDCSI legally transacts insurance business in the State of South Carolina and within the geographical jurisdiction of this Court.

8. Defendant Georgetown Memorial Hospital d/b/a Tidelands Georgetown Memorial Hospital is a tax exempt 501(c)(3) not-for-profit community hospital organized under the laws of South Carolina that provides hospital services to patients residing in or visiting Georgetown County and surrounding areas.

9. Defendant Waccamaw Community Hospital d/b/a Tidelands Waccamaw Community Hospital is a tax exempt 501(c)(3) not-for-profit community hospital organized under the laws of South Carolina that provides hospital services to patients residing in or visiting Georgetown County and surrounding areas.

## FACTUAL ALLEGATIONS

**The September 2, 2020 Infant Brain Damage, Birth-Related Injuries, and Sentinel Event**

10. On August 30, 2020, Alyssa Cherry, f/k/a Alyssa K. Nesbitt, was admitted to Tidelands Waccamaw for contractions and observation of potential labor and discharged the same day. She was readmitted on August 31, 2020 again for observation of potential labor, and

3

again discharged that day. She was readmitted again on September 1, 2020. The admitting and/or attending physician and obstetrician was Monica L. Selander-Han, D.O.

11. The infant allegedly suffered severe brain injuries during birth on or about September 1-2, 2020 based on "(a) brain trauma resulting in massive subdural hemorrhage (and subgaleal hematoma) due to the vacuum extractor attempted delivery by Dr. Selander-Han at [Tidelands] Waccamaw; and, (2) severe HIE [hypoxic-ischemic encephalopathy] from birth asphyxia due to delay by [Tidelands] Waccamaw and/or its employee/agent staff in delivering [the infant] by C-section at that Hospital."

12. Around 5:15 a.m. on September 2, 2020, the infant was transferred by Life Flight services to the Medical University of South Carolina (MUSC) in Charleston, where he remained for 55 days until discharge.

13. The infant now allegedly suffers and will continue to suffer from permanent brain injuries.

**The April 2022 Cherry Action**

14. Ms. Cherry filed the complaint in the Cherry Action on April 26, 2022, both Individually and as Next Friend of H.D., her minor child, against Georgetown Physician Services, LLC d/b/a Tidelands Health Group, Dr. Selander-Han, and Tidelands Waccamaw.

15. Tidelands Waccamaw accepted service of the summons and complaint on or about April 27, 2022.

16. The Cherry Action alleges that the defendants caused injury to both Ms. Cherry and to her fetus/infant son by unreasonably delaying an emergency Cesarean section ("C-section") for more than an hour, despite the standard of care dictating that failure to provide an emergency C-section within thirty minutes from when the doctor deems the procedure necessary.

17.	Ms. Cherry alleged that the defendants unreasonably delayed the C-section because the facility was underprepared and understaffed with anesthesiologists, such that the facility was incapable of responding to patient demands.  Due to this allegedly unreasonable and excessive delay, Ms. Cherry's child, H.D., was born severely depressed and asphyxiated and has experienced permanent and irreversible brain injury.

18.	Ms. Cherry also alleged that H.D. received brain trauma resulting in a massive subdural hemorrhage due to a failed vacuum extractor delivery attempt prior to the C-section.

19.	Ms. Cherry alleged in the original complaint that Tidelands Waccamaw is vicariously liable for standard of care deviations by the obstetrical/labor and delivery nursing or other staff/administration of Tidelands Waccamaw.

20.	Ms. Cherry filed an Amended Complaint on October 17, 2024, adding Inlet Anesthesia Consultants, PC and anesthesiologist, Daniel Carhart, D.O., as defendants and setting forth additional allegations pertaining to alleged regulatory violations, nursing administrative negligence, nursing patient care staff negligence, and/or medical (anesthesia) administrative or staff negligence on the part of Tidelands Waccamaw.

21.	Ms. Cherry filed a Second Amended Complaint on January 3, 2025.

**The Policies**

22.	TDCSI issued Health Care Organizations and Providers Follow Form Excess and Umbrella Liability Policy No. HPX-00086-20-00 to Tidelands Georgetown for the **policy period** July 31, 2020 to April 1, 2021.  (Exhibit A)  Tidelands Waccamaw Community Hospital is a Named Insured under the 2020-21 Policy pursuant to Endorsement No. 2 to that policy.

23.	The 2020-21 Policy was in effect on September 2, 2020, when the infant allegedly suffered severe brain injuries due to a vacuum extractor attempted delivery and a delayed C-section and birth asphyxia.

24. TDCSI issued Health Care Organizations and Providers Follow Form Excess and Umbrella Liability Policy No. HPX-00086-22-02 to Tidelands Georgetown for the **policy period** April 1, 2022 to April 1, 2023. (Exhibit B) Tidelands Waccamaw Community Hospital is a Named Insured under the 2022-23 Policy pursuant to Endorsement No. 3 to that policy.

25. TDCSI was unaware of the circumstances of the brain damage, birth-related injuries to Ms. Cherry's infant, and sentinel event when it issued the 2022-23 Policy.

26. The 2022-23 Policy was in effect on April 27, 2022 when the complaint in the Cherry Action was served upon the **insured**.

27. TDCSI issued Health Care Organizations and Providers Follow Form Excess and Umbrella Liability Policy No. HPX-00086-24-04 to Tidelands Georgetown for the **policy period** April 1, 2024 to April 1, 2025. (Exhibit C) Tidelands Waccamaw Community Hospital is a Named Insured under the 2024-25 Policy pursuant to Endorsement No. 2 to that policy.

28. At the time TDCSI issued the 2024-25 Policy, TDCSI was unaware of the circumstances of the alleged injuries to Ms. Cherry's infant, the fact that Ms. Cherry had issued written Notice of Intent with supporting affidavits, that Tidelands Waccamaw allegedly had participated in a failed mediation concerning the alleged injuries to Ms. Cherry's infant, that Ms. Cherry had filed the Cherry Action, and that Tidelands had reported it to the **underlying insurance** back in 2022.

29. The 2024-25 Policy was in effect on October 21, 2024, when Tidelands untimely reported the Cherry Action to TDCSI, which revealed to TDCSI for the first time the fact of the brain injury, birth-related injuries, and sentinel event four and a half years earlier, as well as the fact that Ms. Cherry had filed a complaint two years earlier, and had issued a written Notice of Intent with supporting affidavits and had allegedly participated in a failed mediation with Tidelands even before filing the April 2022 complaint.

30. TDCSI did not learn that Tidelands had reported the Cherry Action to the **underlying insurance**, but not to TDCSI, back in 2022, until TDCSI further inquired about the matter.

31. Subject to all of its terms and conditions, each of the Policies provides a $1,000,000 each **claim** and aggregate limit of liability in excess of the total limits of liability for all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**.

32. The Insuring Agreement for professional liability insurance in Section I of the each of the Policies provides:

> **We** will pay on behalf of the **insured**, up to the applicable Limit of Liability set forth in ITEM 4 of the Declarations, **damages** and **defense costs** in excess of the total limits of liability for all applicable **underlying insurance** which an **insured** is legally obligated to pay as a result of a covered **claim** for a **professional services wrongful act** happening on or after the **retroactive date**; <u>provided, that the **claim** is first made against the **insured** during the **policy period** or applicable Extended Reporting Period and reported to **us** in accordance with GENERAL CONDITION (D) of this Policy</u>.

(Underlining added).

33. Emphasizing the material nature of timely reporting under the Policies, the Policies require not only reporting of **claims** as soon as practicable, but also set forth an additional, separate and mandatory requirement of reporting as soon as practicable specific types of events that *could* give rise to a **claim**, including brain damage, birth-related injuries, and any sentinel event. Specifically, Condition (D)(1) in each of the Policies states that:

> (D) **Reporting of Claims and Circumstances:**
>
> As a condition precedent to any right to coverage under this Policy, the **insured** must comply with the following reporting provisions:
>
> (1) The **insured** must provide **us** with written notice as soon as practicable of any **claim** under the **underlying insurance**, or any circumstance that could give rise to a **claim** under any **underlying insurance**, involving any of the following:
> …

7

(b)    unanticipated neurological, sensory and/or systemic deficits; brain damage; permanent paralysis, including, but not limited to, paraplegia and quadriplegia; partial or complete loss of sight or hearing; kidney failure; or sepsis;

(c)    birth related injuries, including, but not limited to, maternal or fetal death; anesthesia related injuries; infant resuscitation; shoulder dystocia; or cerebral palsy;

…

(g)    any sentinel event;

…

(i)    any matter reserved in excess of twenty-five percent (25%) of the total remaining applicable limits of liability of the applicable **underlying insurance**.

Timely and sufficient notice by one **insured** of any such **claim** or circumstance shall be deemed timely and sufficient notice for all **insureds**. Such notice shall give full particulars of the **claim** or circumstance, including, but not limited to: a description of the **claim** or circumstance; the alleged act, error or omission by an **insured** or the **occurrence** giving rise to the **claim** or circumstance, the identity of all potential claimants and the health care provider(s) and/or any **insureds** involved; a description of the injury or damages that resulted or may result from the act, error, omission or **occurrence** giving rise to the **claim** or circumstance; information on the time, place and nature of the act, error, omission or **occurrence** giving rise to the **claim** or circumstance; and the manner in which an **insured** first became aware of such act, error, omission or **occurrence**.

34.    Yet further emphasizing the material nature of reporting **claims** and certain circumstances, the Policies also set forth an additional, separate requirement, Condition (D)(2), of *quarterly reporting* with detail of the all **claims** under any **underlying insurance**, as well as all circumstances under any **underlying insurance,** including the enumerated circumstances set forth in Condition (D)(1). Specifically, the reporting provision in Condition (D)(2) of each of the Policies also requires:

(2)(a)    No later than ten (10) days after the end of each calendar quarter during the **policy period**, the **insured** shall submit to **us** a Quarterly Loss Run Report in writing (or electronically if **we** request) summarizing all **claims** and circumstances under any **underlying insurance**, including those described in paragraph (D)(1) above, providing a description of the nature of the **claim** or circumstance, the date the claim was made, the date of loss, the claimant's name, the names of any involved parties and the status of the **claim** or circumstance.

8

    (b)    After this Policy expires and until **we** direct otherwise in writing, the **insured** will be obligated to continue to submit Quarterly Loss Run Reports to **us** on all **claims** and circumstances under any **underlying insurance**.

    (c)    The submission of such Quarterly Loss Run Reports will serve as notice for those **claims** or circumstances not subject to the reporting criteria set forth in paragraph (D)(1) above.

35. Each of the Policies, in Section II(C), defines a **claim** to include "written notice received by an **insured** that any person or entity intends to hold an insured responsible for a **professional services wrongful act**."

36. Each of the Policies, in Section II(CC), defines a **professional services wrongful act** to include "any actual or alleged act, error or omission, or series of acts, errors or omissions, by an **insured** in the rendering of, or failure to render, **professional services** that results in **bodily injury**."

37. Each of the Polices provides the following:

**(E) Defense, Settlement and Cooperation:**

    (1) The **insured** shall not incur any **defense costs** or admit liability for, or settle or offer to settle, any **claim** in any amount that would involve the coverage afforded by this Policy without **our** prior written consent.

    (2) When there is **underlying insurance** that applies to a **claim**, **we** will have the right, but not the obligation, to associate with the **insured** in the defense of any such **claim** against the **insured**.

…

    (4) **We** may, at **our** discretion, investigate any **occurrence** or **professional services wrongful act** that may give rise to a **claim** involving the coverage afforded by this Policy.

…

**Tidelands' Failure to Report the Enumerated Circumstances and the Cherry Action as Soon as Practicable, and Failure to Submit Quarterly Reports**

38. Although the alleged brain damage, birth-related injuries, and sentinel event are all enumerated circumstances that could give rise to a **claim** that are specifically called out in the Policies for reporting to TDCSI as soon as practicable, even before a **claim** is made, Tidelands

9

failed to disclose the events to TDCSI until October 21, 2024 – more than four years after Ms. Cherry's infant allegedly suffered severe brain injuries.

39. Ms. Cherry alleges that before she filed the complaint, she provided Tidelands Waccamaw a written Notice of Intent and two attached affidavits of a medical expert and a nursing expert, along with their curricula vitae (CVs) and standard interrogatory answers.

40. Ms. Cherry also alleges that she participated in a mediation with Tidelands Waccamaw before she filed the complaint.

41. Tidelands never reported receiving the written Notice of Intent and supporting affidavits, or the alleged mediation and failure to settle, to TDCSI.

42. Tidelands Waccamaw accepted service of the complaint in the Cherry Action on April 27, 2022. Tidelands Waccamaw reported the Cherry Action to the **underlying insurance**, which is identified in the Policies as the Insurance Reserve Fund, no later than at or about the time it received service of the summons and complaint.

43. Tidelands did not report the Cherry Action to TDCSI until October 21, 2024 – at least two and a half years after reporting the Cherry Action to the **underlying insurance** and at least as long or longer a period since Tidelands Waccamaw alleged received Ms. Cherry's written Notice of Intent with supporting affidavits.

44. Tidelands also did not report the Cherry Action to TDCSI until after Tidelands Waccamaw allegedly participated in a failed settlement effort as referenced in the complaint filed in 2022.

45. Tidelands never provided a single quarterly report to TDCSI concerning the birth-related injuries to Ms. Cherry's child, or the brain damage to the infant, or the sentinel event until after October 21, 2024.

10

46. At no point before October 21, 2024, did Tidelands ever provide TDCSI with a single quarterly report disclosing the 2022 Complaint or the Cherry written Notice of Intent.

**Tidelands' Demand for Coverage Under the Policies**

47. Tidelands has now demanded coverage under the Policies.

48. Because Tidelands did not report the Cherry Action to TDCSI until October 21, 2024, Tidelands denied TDCSI its rights under the Policies to associate in the defense of the **claim** for more than two and a half years. Tidelands also denied TDCSI its rights to timely investigate any **professional services wrongful act** that may give rise to a **claim** involving the coverage afforded by each Policy.

49. Although the Policies are all issued on a "claims first made" basis, and despite repeated inquiry from TDCSI, Tidelands refuses to specify which policy it asserts should afford coverage for the Cherry Action.

50. Tidelands has demanded that TDCSI pay amounts that exceed $75,000 in connection with the Cherry Action.

## COUNT I
### A Declaration of No Coverage for the Cherry Action Under the Policies Because the Claim Was Not Reported As Soon As Practicable

51. TDCSI realleges and incorporates by reference the allegations of paragraphs 1 through 50 as if fully set forth in this Count I.

52. The Insuring Agreement in each of the Policies requires that "the **claim** is first made against the insured during the **policy period** or applicable Extended Reporting Period and reported to us in accordance with GENERAL CONDITION (D) of this Policy."

53. A **claim** against any **insured** concerning the alleged injury to Ms. Cherry's infant was made <u>no later than</u> when the complaint in the Cherry Action was served on Tidelands

11

Waccamaw on April 27, 2022, but was not reported to TDCSI until October 21, 2024, two and a half years later.

54. The Cherry Action was not reported to TDCSI during the 2022-23 **policy period**, which was as soon as practicable after the Cherry Action was filed and served, as required to satisfy the Policies' Insuring Agreement. The fact that Tidelands reported the Cherry Action to the **underlying insurance** readily demonstrates that it was practicable for Tidelands to report the Cherry Action to any or all of its insurers in or around April 2022, but Tidelands chose not to report the Cherry Action to TDCSI for another two and a half years, until October 21, 2024.

55. TDCSI is therefore entitled to a declaration that the Policies do not afford coverage for the Cherry Action because a **claim** was first made no later than during the 2022-23 **policy period**, but it was not reported to TDCSI as soon as practicable and therefore the Cherry Action does not fall within the scope of the Insuring Agreement in the Policies.

## COUNT II
### In the Alternative, a Declaration of No Coverage for the Cherry Action Under The Policies Because The Alleged Brain Injury, Birth-Related Injuries, and Sentinel Event Were Not Reported As Soon As Practicable

56. TDCSI realleges and incorporates by reference the allegations of paragraphs 1 through 50 as if fully set forth in this Count II.

57. Allegations of brain injury, birth-related injuries, and a sentinel event are expressly identified in the Policies as circumstances that might lead to a **claim**, which the Policies mandate must be reported to TDCSI as soon as practicable after the September 2, 2020 event and alleged injuries.

58. TDCSI is therefore entitled to a declaration that the Policies do not afford coverage for the Cherry Action because Tidelands failed to provide written notice to TDCSI of

the alleged brain injury, birth-related injuries, and sentinel event – which are all as circumstances specified in the Policies as ones that could give rise to a **claim** – as soon as practicable.

## COUNT III
### In the Alternative, a Declaration of No Coverage for the Cherry Action Under the Policies Because the Cherry Claim, as well as the Alleged Brain Injury, Birth-Related Injuries, and Sentinel Event Were Not Reported with Required Details in Written Quarterly Reports

59. TDCSI realleges and incorporates by reference the allegations of paragraphs 1 through 50 as if fully set forth in this Count III.

60. The alleged brain injury, birth-related injuries, and sentinel event should have been reported to TDCSI in writing each and every quarter, beginning September 2, 2020, with a description of the nature of the **claim** or circumstance, the date the **claim** was made, the date of loss, the claimant's name, the names of any involved parties and the status of the **claim** or circumstance.

61. Alternatively, the Cherry **claim** should have been reported to TDCSI in writing each and every quarter, beginning at least as early as April 27, 2022, with a description of the nature of the **claim**, the date the **claim** was made, the date of loss, the claimant's name, the names of any involved parties and the status of the **claim**.

62. TDCSI is therefore entitled to a declaration that the Policies do not afford coverage for the Cherry Action because Tidelands failed to provide TDCSI with the details required in written quarterly reports regarding the circumstances and, subsequently, the **claim**, each and every quarter after September 2, 2020.

## COUNT IV
### In the Alternative, a Declaration of No Coverage for the Cherry Action Under the 2024-25 Policy Because it is Not a Claim First Made in the 2024-25 Policy Period

63. TDCSI realleges and incorporates by reference the allegations of paragraphs 1 through 50 as if fully set forth in this Count IV.

13

64. The 2024-25 Policy, like the other Policies, affords coverage only for **claims** first made during the **policy period**.

65. The complaint in the Cherry Action, which was filed and served on Tidelands Waccamaw on April 27, 2022, is a **claim** because it is a written notice received by an **insured** that any person or entity intends to hold an **insured** responsible for a **professional services wrongful act**. Specifically, the complaint as filed in April 2022 alleged that that Tidelands Waccamaw is vicariously liable for standard of care deviations by the obstetrical/labor and delivery nursing or other staff/administration of Tidelands Waccamaw. As a result, a **claim** concerning the brain injury, birth-related injuries, and sentinel event was made no later than when the complaint was served on Tidelands Waccamaw on April 27, 2022, and likely was made even earlier based on the alleged written Notice of Intent described in the complaint in the Cherry Action.

66. TDCSI is therefore entitled, in the alternative, to a declaration that the 2024-25 Policy does not afford coverage for the Cherry Action because the **claim** was not first made during the 2024-25 **policy period**.

WHEREFORE, TDCSI respectfully requests:

A. As to Count I, that the Court declare that the Policies do not afford coverage for the Cherry Action because a **claim** was first made no later than during the 2022-23 **policy period**, but it was not reported to TDCSI as soon as practicable and therefore the Cherry Action does not fall within the scope of the Insuring Agreement in the Policies.

B. As to Count II, that the Court declare, in the alternative, that the Policies do not afford coverage for the Cherry Action because Tidelands failed to provide written notice to TDCSI of the alleged brain injury, birth-related injuries, and sentinel

14

   event as soon as practicable, which is a condition precedent to coverage under each of the Policies.

C.  As to Count III, that the Court declare, in the alternative, that the Policies do not afford coverage for the Cherry Action because Tidelands failed to provide to TDCSI written quarterly reports with requisite details regarding the circumstances and, subsequently, the **claim**, which is a condition precedent to coverage under each of the Policies.

D.  As to Count IV, that the Court declare, in the alternative, that the 2024-25 Policy does not afford coverage for the Cherry Action because it is not a **claim** that was first made during the 2024-25 **policy period**.

E.  That the Court award TDCSI such other and further relief as it may deem appropriate.

Dated this 16th day of April, 2025

Respectfully submitted,

/s/Morgan S. Templeton
Morgan S. Templeton (Fed ID # 7187)
Wall Templeton & Haldrup, P.A.
145 King Street, Suite 300 (29401)
Post Office Box 1200
Charleston, SC 29402
(843) 329-9500 (tel.)
(843) 329-9501 (fax)
Morgan.Templeton@WallTempleton.com
***Counsel for Plaintiff TDC Specialty Insurance Company***

*Of Counsel:*
Mary E. Borja
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000 (tel.)
(202) 719-7049 (fax)
mborja@wiley.law